JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE MARCUS ALBERT ROMERO AND NATALIA VICTORIA ROMERO,<br><br>                    Appellants. | Case No. 5:23-cv-01010-FLA<br>Case No. 5:23-cv-01907-FLA<br>Case No. 6:22-bk-12942-WJ<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S MAY 2 AND SEPTEMBER 8, 2023 ORDERS** |

## <u>RULING</u>

Appellants and Debtors Marcus Albert Romero and Natalia Victoria Romero ("Appellants" or "Debtors") appeal Orders by the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") in Case No. 6:22-bk-12942-WJ (the "Bankruptcy Action," or "Bankr. Case 22-12942"). Dkts. 8, 26. The Chapter 7 Trustee of Appellants' Bankruptcy Estate, Todd A. Frealy ("Appellee" or the "Trustee"), requests this court affirm the Bankruptcy Court's Orders. Dkts. 9, 27. On October 12, 2023, the court consolidated these two appeals, with Case 5:23-cv-01010-FLA designated the lead case. Dkt. 21.[1] The court finds these appeals

---

[1] All citations to the docket shall be to Case 5:23-cv-01010-FLA unless specified otherwise.

1

appropriate for resolution without oral argument.  Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court AFFIRMS the Bankruptcy Court's May 2 and September 8, 2023 Orders and DISMISSES the subject appeals.

## BACKGROUND

On August 4, 2022, Debtors filed a Voluntary Petition for Bankruptcy ("Bankruptcy Petition"), requesting relief under chapter 7 of the United States Bankruptcy Code.[2]  Bankr. Case 22-12942, Dkt. 1.  Debtors' Official Form 106A/B (Schedule A/B) listed assets including a single-family home located at 45119 Riverstone Court, Temecula, California (the "Residence"), which they valued at $1,254,300.  EOR 00022.[3]  Pursuant to California Code of Civil Procedure § 704.730 ("CCP § 704.730"), Debtors claimed a homestead exemption on their Official Form 106C (Schedule C) of $53,464.40, EOR 00031, which they amended to $558,000, on February 17, 2023, EOR 00297.

Debtors' Official Form 106D (Schedule D) identified the following creditors with secured claims against the Residence, in order of priority:

1.  Chase Bank: first deed of trust of $521,585.60;

2.  Cenlar Mortgage: second deed of trust of $258,223.00;

3.  Financial Casualty and Surety ("FCS"): third deed of trust of $250,000.00;

4.  Internal Revenue Service: first federal tax lien of $48,673.00; and

5.  Internal Revenue Service: second federal tax lien of $122,354.00.

EOR 00033–35, 93; Dkt. 8 (Debtors' Opening Br.) at 5; Dkt. 9 (Tr. Answering Br.) at 7–8.  The parties additionally state the Riverside County Tax Collector is owed

---

[2] All statutory references shall be to title 11 of the United States Code (the "Bankruptcy Code") unless specified otherwise.

[3] The Excerpts of Record ("EOR") were filed as Dkts. 8-1 through 8-4, 10, 26-1, and 28.

$6,625.25 in property taxes.  Dkt. 8 at 5; Dkt. 9 at 10.  These liens total $1,207,460.60.

On February 10, 2023, the Trustee filed in the Bankruptcy Action: (1) a Motion to Approve Stipulation with Secured Creditor Financial Casualty Surety, Inc. Regarding Treatment of Secured Claim in Connection with Sale of Estate Property … (the "Compromise Motion," EOR 00149–55); and (2) an Objection to Debtors' Claim of Exemption (the "Objection to Exemption," EOR 00156–217).  In the Compromise Motion, the Trustee stated he had reached an agreement with FCS whereby FCS consented to a sale of the Residence on the condition that FCS receive 60% of the proceeds encumbered by FCS' deed of trust from the sale of the Residence, after the first and second deeds of trust, the costs of sale, and any unpaid real property taxes were paid, with the remaining 40% to be a carve-out for the benefit of the bankruptcy estate.  EOR 00150.  The Objection to Exemption sought to disallow Debtors' claim of a homestead exemption concerning the Residence, on the grounds that California's exemption laws do not protect property from the enforcement of consensual liens.

On February 14, 2023, Debtors filed a Motion for Order to Compel Abandonment of Property of the Estate (the "Abandonment Motion"), requesting the Bankruptcy Court compel the Trustee to abandon the Residence on the grounds there was no remaining equity after payment of the secured claims and tax liens, and that the Residence was of inconsequential value and benefit to the bankruptcy estate.  EOR 00218–94.

These matters came to hearing on March 7 and May 2, 2023.  EOR 00002, 572–621.  After considering the parties' arguments, the Bankruptcy Court issued a tentative ruling granting the Compromise Motion, denying the Abandonment Motion, and sustaining in part the Objection to Exemption.  EOR 00592–603, 615–20.  The Bankruptcy Court noted Debtors over-encumbered the Residence with three mortgages voluntarily, such that there was no remaining equity to which the homestead exemption could attach.  EOR 00592–93.  The Bankruptcy Court further

3

noted the Trustee acted within his fiduciary duties by entering into the agreement with FCS to recover money for the benefit of unsecured creditors, that FCS acted within its rights by assigning a portion of the proceeds of its secured lien to the bankruptcy estate, and that the assignment would provide a meaningful recovery for the unsecured creditors.  EOR 00593–96, 599–600, 615–17.

On May 2, 2023, the Bankruptcy Court issued an order adopting the findings of fact and conclusions of law from the March 7 and May 2, 2023 hearings and: (1) granting the Trustee's Compromise Motion; (2) denying Debtors' Abandonment Motion; and (3) sustaining in part the Trustee's Objection to Exemption, finding "[t]he homestead exemption of the Debtors attaches to any and all net sales proceeds of the home (after payment of all secured claims, real estate taxes, closing costs, etc.) but does not attach to any sales proceeds attributable to the portion of the consensual lien of [FCS] which FCS assigned to the bankruptcy estate for the benefit of creditors pursuant to the stipulation approved by the [Bankruptcy] Court."  EOR 00002.

On August 15, 2023, the Trustee filed a Motion for Order: (1) Authorizing Sale of Estate's Right, Title and Interest in Real Property Free and Clear of Liens…; (2) Approving Overbid Procedure; (3) Approving Payment of Real Estate Brokers' Commissions and Related Closing Costs; and (4) Finding Purchasers are Purchasers in Good Faith (the "Sale Motion").  EOR 00634–753.  The Sale Motion came to hearing on September 5, 2023, and the Bankruptcy Court granted the Sale Motion on September 8, 2023.  EOR 00780–81, 785–807.

Debtors appeal the Bankruptcy Court's May 2 and September 8, 2023 Orders.

## **MAY 2, 2023 ORDER**

### I.    **Issues**

1. Whether there was a compromise between the Trustee and FCS under Fed. R. Bankr. P. 9019 ("Rule 9019"), and whether the Bankruptcy Court abused its discretion in approving the compromise.

2. Whether Debtors' homestead exemption attaches to the portion of FCS' recovery from the sale of the Residence that FCS carved out/assigned to the

1  bankruptcy estate under its compromise with the Trustee.[4]

2  3.  Whether the Residence should have been abandoned given the Residence
3     was over-encumbered and Debtors' homestead exemption, or whether the
4     Trustee was able to sell the Residence lawfully based on the compromise
       with FCS.

5  Dkt. 8 at 10; Dkt. 9 at 2–3.

6  **II.    Legal Standard**

7       On appeal, a district court "review[s] the bankruptcy court's findings of fact

8  under the 'clearly erroneous' standard and its conclusions of law *de novo*."  *In re A &*

9  *C Props.*, 784 F.2d 1377, 1380 (9th Cir. 1986).  A bankruptcy court's decision to

10  approve or deny a compromise or to authorize or deny abandonment is reviewed for

11  abuse of discretion.  *Id.*; *In re Johnston*, 49 F.3d 538, 540 (9th Cir. 1995).  "The

12  determination of a homestead exemption based on undisputed facts is a legal

13  conclusion interpreting statutory construction which is reviewed de novo."  *In re*

14  *Chappell*, 373 B.R. 73, 76 (B.A.P. 9th Cir. 2007).  "Whether property is included in a

15  bankruptcy estate is a question of law also subject to de novo review."  *Id.*

16       "A bankruptcy court abuses its discretion when it applies the incorrect legal rule

17  or its application of the correct legal rule is '(1) illogical, (2) implausible, or (3)

18  without support in inferences that may be drawn from the facts in the record.'"  *In re*

19  _____

20  [4] Debtors identify this Issue as: "Whether the bankruptcy court erred in entering an
21  order on the Chapter 7 trustee's objection to the Debtors' homestead exemption when
    the motion stated no actual objection to the exemption claimed and the ruling was
22  nothing more than an advisory opinion from the bankruptcy court about how funds
    should be dispersed upon a future sale of the Debtors' residence which was in
23  violation of the Code, *Tillman*, and *Jevic* by ruling that the Trustee did not have to pay
24  the Debtors' homestead exemption from the sale proceeds."  Dkt. 8 at 10.  Debtors'
    statement does not accurately describe the Issue presented, for reasons including that
25  Debtors do not provide any argument or legal authority to support their assertions that
26  the Objection to Exemption "stated no actual objection to the exemption claimed" and
    the Bankruptcy Court's ruling on the Objection to Exemption was an advisory
27  opinion.  *See* Dkts. 8, 11.  This encapsulation of the Issue more properly captures the
28  issue raised and argued by the parties in this appeal.

*KVN Corp.*, 514 B.R. 1, 5 (B.A.P. 9th Cir. 2014) (quoting *United States v. Loew*, 593 F.3d 1136, 1139 (9th Cir. 2010)).  A determination by the bankruptcy court that rests on an erroneous interpretation of law constitutes an abuse of discretion *per se*.  *In re Debbie Reynolds Hotel & Casino, Inc.*, 255 F.3d 1061, 1065 (9th Cir. 2001).

**III.  Discussion**

**A.    The Basic System of Priority for Distributing Assets of the Estate, the Homestead Exemption, and Carve-Out Agreements**

"Under § 704(a)(1), a chapter 7 trustee has the duty to 'collect and reduce to money the property of the estate for which such trustee serves....'" *KVN*, 514 B.R. at 5 (citing 11 U.S.C. § 704(a)(1)).  "To fulfill this duty, the trustee's primary job is to marshal and sell the assets, so that those assets can be distributed to the estate's creditors." *Id.* (quotation marks and citations omitted).  "Indeed, a core power of a bankruptcy trustee under § 363(b) is the right to sell 'property of the estate' for the benefit of a debtor's creditors." *Id.*

A bankruptcy trustee may sell property of the estate "free and clear of any interest in the property of an entity other than the estate" if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

"The [Bankruptcy] Code … sets forth a basic system of priority, which ordinarily determines the order in which the bankruptcy court will distribute assets of the estate." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 457 (2017) (erroneously cited by Debtors as *Cryzewski v. Jevic Holding Corp.* (*see, e.g.*, Dkt. 8 at 3)).

1   "Secured creditors are highest on the priority list, for they must receive the proceeds

2   of the collateral that secures their debts." *Id.* (citing 11 U.S.C. § 725). "Special

3   classes of creditors, such as those who hold certain claims for taxes or wages, come

4   next in a listed order." *Id.* (citing 11 U.S.C. §§ 507, 726(a)(1)). "Then come low-

5   priority creditors, including general unsecured creditors." *Id.* (citing 11 U.S.C.

6   § 726(a)(2)).

7       "[I]n some circumstances, a debtor may exempt property from the bankruptcy

8   estate, thereby removing it from the bankruptcy estate." *In re Tillman*, 53 F.4th 1160,

9   1163 (9th Cir. 2022). "In such circumstances, the debtor generally retains the exempt

10  property, and the exempt property cannot be used by the bankruptcy estate to satisfy

11  the claims of unsecured creditors." *Id.* (citing *Owen v. Owen*, 500 U.S. 305, 308

12  (1991)). "Section 522 of the Bankruptcy Code enumerates exemptions available to an

13  individual debtor in bankruptcy, but § 522(b)(1) also authorizes state legislatures to

14  'opt out' of the § 522 exemption scheme and provide their own exemption schemes."

15  *Id.* "'If a State opts out, then its debtors are limited to the exemptions provided by

16  state law.'" *Id.* (quoting *Owen*, 500 U.S. at 308).

17      "California has opted out of the federal bankruptcy exemption scheme, so its

18  debtors claim exemptions under state law." *In re McKee*, 90 F.4th 1244, 1247 (9th

19  Cir. 2024) (citing Cal. Code Civ. Proc. § 703.130). "California's homestead

20  exemption laws are set forth in Article 4 (§§ 704.710 through 704.850) and Article 5

21  (§§ 704.910 through 704.995) of Title 9 (Enforcement of Judgments), Division 2,

22  Chapter 4 of the [California Code of Civil Procedure]." *In re Kelley*, 300 B.R. 11, 17

23  (B.A.P. 9th Cir. 2003). Debtors claim the Article 4 "automatic" homestead exemption

24  here, pursuant to California Code of Civil Procedure § 704.730. EOR 00031; Dkt. 8

25  at 18. "That exemption protects a debtor who resides (or who is related to one who

26  resides) in the homestead property at the time of a forced judicial sale of the

27  dwelling." *McKee*, 90 F.4th at 1247 (quotation marks omitted) (citing Cal. Code Civ.

28  Proc. § 704.720(a)). "The filing of a bankruptcy petition constitutes a forced judicial

sale for this exemption." *Id.* The "automatic" homestead exemption is entitled to lower priority than secured claims and tax liens, and higher priority than unsecured claims. Cal. Code Civ. Proc. §§ 703.010(b), 704.850.

"It is universally recognized … that the sale of a fully encumbered asset is generally prohibited." *KVN*, 514 B.R. at 5 (collecting cases). "In that instance, the trustee's proper function is to abandon the property, not administer it, because the sale would yield no benefit to unsecured creditors." *Id.* at 6. "Despite the general rule prohibiting the sale of fully encumbered property, chapter 7 trustees may seek to justify the sale through a negotiated carve-out agreement with the secured creditor." *Id*. "A carve-out agreement is generally understood to be an agreement by a party secured by all or some of the assets of the estate to allow some portion of its lien proceeds to be paid to others, i.e., to carve out its lien position." *Id.* (quotation marks and citation omitted).

"There is no per se rule that bans this type of contractual arrangement: Creditors are generally free to do whatever they wish with the bankruptcy dividends they receive, including to share them with other creditors." *Id.* (cleaned up). Such agreements, however, "have been reviewed under a standard of heightened scrutiny due to past abuses," and a rebuttable presumption of impropriety applies. *Id.* at 7–8. "To rebut the presumption, the case law directs the following inquiry: Has the trustee fulfilled his or her basic duties? Is there a benefit to the estate; i.e., prospects for a meaningful distribution to unsecured creditors? Have the terms of the carve-out agreement been fully disclosed to the bankruptcy court? If the answer to these questions is in the affirmative, then the presumption of impropriety can be overcome." *Id.* at 8.

## B.    The Compromise Motion

Rule 9019(a) provides in relevant part: "On the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). "The purpose of a compromise agreement is to allow the trustee and the

creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *A & C Props.*, 784 F.2d at 1380–81. "The law favors compromise and not litigation for its own sake, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." *Id.* at 1381 (citations omitted). "Thus, on review, [appellate courts] must determine whether the settlement entered into by the trustee was reasonable, given the particular circumstances of the case." *Id.*

> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* (citation omitted).

As stated in the Compromise Motion, FCS consented to the sale of the Residence "on the condition that FCS receives 60% of the proceeds encumbered by FCS's deed of trust from the sale of the Property after payments to satisfy, in full, the first priority mortgage in favor of JP Morgan Chase Bank, the next priority lien in favor of Pentagon Federal Credit Union, estimated sale costs of $90,000, insurance costs and any unpaid real property taxes." EOR 00089. FCS further "agree[d] to a carve-out in the amount of 40% of the proceeds encumbered by its lien that encumbers the [Residence] from the sale of the [Residence], for the benefit of the Debtor[s'] bankruptcy estate," and "to subordinate the general unsecured portion of its proof of claim in the amount of $657,245.75, to allowed general unsecured claims." EOR 00089–90. The Trustee agreed to "ensure that a minimum of 50% of the net proceeds received by the bankruptcy estate from the sale [would] be paid to non-administrative unsecured creditors." EOR 00090.

/ / /

9

Debtors contend that, "from a simple review of the Trustee's analysis of the factors applicable to a usual '9019 Motion[,]' there is no compromise at issue." Dkt. 8 at 30. According to Debtors, "without a compromise of controversy that gives rise to a 'recovery' under the Code, there is no authority for the Trustee to sell the Debtors' Residence and not pay the Debtors' homestead exemption… through only a voluntary assignment of a portion of the 3rd deed of trust." *Id.*[5]

The Trustee notes "FCS filed a claim against the estate seeking payment of $900,000, $250,000 of which was secured," and argues that a compromise exists because FCS agreed to carve out and assign a portion of its secured deed of trust to the bankruptcy estate and subordinate the unsecured portion of its claim, "in exchange for the Trustee's agreement to seek a sale of the Property and to prepare all necessary pleadings to obtain court approval for the same." Dkt. 9 at 16, 26–27. In the underlying Bankruptcy Action, the Trustee additionally argued the compromise satisfied the heightened scrutiny required under *KVN* and was fair, reasonable, and adequate under the factors set forth in *A & C Props*. EOR 00592–603, 607–09. The Bankruptcy Court considered the parties arguments at the March 7 and May 2, 2023 hearings, before granting the Compromise Motion and approving the compromise. *See* Dkt. 8 at 29–30; EOR 00615–18.

The Bankruptcy Court's determination that FCS and the Trustee reached a compromise of FCS' claims and its decision to approve the compromise were logical, plausible, and supported by inferences that may be drawn reasonably from the facts in the record. *See KVN*, 514 B.R. at 5. The Bankruptcy Court, thus, did not abuse its

---

[5] Debtors' arguments are difficult to follow and unclear as to what point exactly Debtors are attempting to make. *See* Dkt. 8 at 29–36. For example, Debtors acknowledge the Bankruptcy Court granted the Compromise Motion pursuant to Rule 9019, and that the Trustee stated he was not seeking to sell the Residence pursuant to § 522(g), but spend six pages arguing the compromise is not valid because there is no "recovery" under § 522(g). Dkt. 8 at 31–36.

1    discretion in finding the compromise agreement constituted an actual compromise of

2    FCS' secured and unsecured claims and approving the compromise under Rule 9019.

3         Accordingly, the appeal is DENIED on this Issue.  Having affirmed the

4    Bankruptcy Court's ruling for the reasons stated, the court need not address the

5    parties' remaining arguments on this Issue.  *See* Dkt. 8 at 11, 31–36.

6         **C.    The Trustee's Objection to Exemption**

7         The second Issue raised by the parties concerns whether Debtors' homestead

8    exemption attaches to the portion of FCS' recovery from the sale of the Residence that

9    FCS carved out/assigned to the bankruptcy estate under its compromise with the

10   Trustee.  Debtors present a number of arguments for why they believe the Objection

11   to Exemption should have been overruled, which the court will address in turn.

12        First, Debtors argue their homestead exemption should attach to the carve-out

13   "because the *property* which gives it cash value has been exempted."  Dkt. 8 at 14

14   (emphasis in original).  While Debtors acknowledge "[t]here is no precedential

15   authority on whether a homestead exemption applies to a portion of a lien carved out

16   for the benefit of the estate," they argue that "the cases which say the exemption does

17   apply to the carveout are better reasoned and should be persuasive to this court."  *Id.*

18   at 14, 24–27.  The court disagrees.

19        "California does not permit a debtor to exempt his entire interest in a

20   homestead, but specifically limits the dollar amount up to which a homestead

21   exemption can be claimed."  *In re Reed*, 940 F.2d 1317, 1321 (9th Cir. 1991) (citing

22   Cal. Code Civ. Proc. § 704.730(a)).  "The statutory scheme implementing the

23   [homestead exemption] … is said to provide protection for a portion of the *equity* in

24   the debtor's home against creditors who seek satisfaction by forced sale of the home."

25   *In re Hyman*, 123 B.R. 342, 345 (B.A.P. 9th Cir. 1991) (cleaned up, italics in

26   original).  "The language of the relevant statutes makes it clear that the 'homestead

27   exemption' in California is merely a debtor's right to retain a certain sum of money

28   when the court orders sale of a homestead in order to enforce a money judgment; it is

1    not an absolute right to retain the homestead itself." *Reed*, 940 F.2d at 1321 (citing

2    Cal. Code Civ. Proc. § 704.720(b)).

3        It is undisputed the Residence was over-encumbered, "which, based on the

4    Debtors' valuation of the Residence, left no realizable equity in the property even

5    without taking into consideration the Debtors' homestead exemption." *E.g.*, Dkt. 8 at

6    5. Because FCS' secured lien commands higher priority than Debtors' homestead

7    exemption, FCS is entitled to recover on its secured deed of trust from a sale of the

8    Residence before Debtors are paid. *See* Cal. Code Civ. Proc. §§ 703.010(b), 704.850.

9    As stated, "[c]reditors are generally free to do whatever they wish with the bankruptcy

10   dividends they receive." *KVN*, 514 B.R. at 6. The carve-out, thus, does not violate

11   the basic system of priority for distribution of assets of the estate, and the Bankruptcy

12   Court did not abuse its discretion in sustaining in part the Objection to Exemption and

13   finding Debtors' homestead exemption does not attach to the carve-out funds.

14       Second, Debtors contend *Jevic*, 580 U.S. at 451, forbids a secured creditor from

15   assigning or carving out a portion of its recovery to pay unsecured creditors who are

16   lower in priority than Debtors' homestead exemption. Dkt. 8 at 15. According to

17   Debtors, "[t]he Trustee's carveout creates … freed up equity, because FCS has given

18   up a portion of its secured value to the unsecured creditors," which must be distributed

19   to Debtors because of their homestead exemption. *Id.* Debtors further argue *Jevic*

20   prohibits a high-priority creditor from "do[ing] whatever it wants with the proceeds of

21   its loan." *Id.* The court disagrees, as Debtors seek to extend *Jevic* beyond the facts

22   and reasoning of that case.

23       In *Jevic*, 580 U.S. at 454, 460, the bankruptcy court dismissed a debtor's

24   chapter 11 bankruptcy petition pursuant to a settlement agreement between the debtor

25   and certain creditors, without restoring the pre-petition status quo. Under the

26   structured dismissal proposed, the petitioners, who were mid-priority creditors with a

27   priority wage claim, would receive nothing while higher-priority secured creditors and

28   lower-priority general unsecured creditors would be paid. *Id.* at 460–61. The

12

Supreme Court reversed the dismissal, holding bankruptcy courts do not have "the legal power to order this priority-skipping kind of distribution scheme in connection with a Chapter 11 dismissal." *Id.* at 455 (emphasis omitted).

The structured dismissal proposed in *Jevic* violated the basic priority system because it deprived the mid-priority creditors of property interests with actual value. *Id.* at 464 ("[T]he Bankruptcy Court's approval of the structured dismissal cost [the mid-priority creditors] something.  They lost a chance to obtain a settlement that respected their priority.  Or, if not that, they lost the power to bring their own lawsuit on a claim that had a settlement value of $3.7 million.").

Here, in contrast, Debtors' property interests and position remain unaffected by the bankruptcy court's approval of the compromise because Debtors have no realizable equity in the Residence to protect.  FCS' decision to carve out a portion of its recovery on the third deed of trust for the bankruptcy estate does not reduce in any way Debtors' expected recovery under the homestead exemption.  The distribution approved by the Bankruptcy Court does not deviate from or violate the basic priority rules for distribution.  If anything, *Jevic* would support affirming the Bankruptcy Court's ruling, since requiring FCS to give up a portion of its recovery on its secured lien to Debtors, without FCS' consent, would violate the ordinary rules of priority.

*Jevic* neither considered nor discussed whether a high-priority secured creditor can assign or carve out a portion of its own recovery for the benefit of the bankruptcy estate and low-priority general unsecured creditors, and does not support Debtors' contention that a high-priority secured creditor may not agree to carve out a portion of its recovery for the bankruptcy estate.  Debtors' argument, thus, fails.

Third, Debtors contend the language and policies stated in *Tillman* establish that the Residence has been withdrawn from the estate because of their homestead exemption.  Dkt. 8 at 19–20.  Debtors note the Ninth Circuit recognized "'an exemption is an interest *withdrawn* from the estate (and hence from the creditors) for the benefit of the debtor,'" *id.* at 19 (citing *Tillman*, 53 F.4th at 1168 (emphasis in

1  original)), and argue their homestead exemption withdraws the Residence from the

2  estate, "subject to the three trust deeds and the [United States Internal Revenue

3  Service ("IRS")] tax liens, which the Debtors must deal with outside of the bankruptcy

4  proceedings." *Id.* at 20.

5       In *Tillman*, 53 F.4th at 1163, the Ninth Circuit held that a trustee may not avoid

6  a tax lien on property subject to Arizona's homestead exemption and preserve the

7  value of the lien for the benefit of the bankruptcy estate under §§ 551 and 724(a).

8  Neither §§ 551 nor 724(a) are at issue in the subject appeal, and *Tillman* is

9  inapposite.[6]

10      Even if the court were to assume *arguendo* that *Tillman* established a policy

11  whereby Debtors' homestead exemption withdraws their property interest from the

12  estate, such a policy would be irrelevant here since Debtors admit the Residence is

13  over-encumbered and there is no realizable equity to which the homestead exemption

14  could attach. *See* Dkt. 8 at 5, 10–11. Because Debtors have no realizable property

15  interest in the Residence, there is nothing to withdraw from the estate based on the

16  homestead exemption. Debtors' argument, thus, fails.

17  _____

18  [6] In *Tillman*, 53 F.4th at 1164–65, the trustee filed an adversary proceeding, seeking
    leave to avoid the federal tax lien on the debtor's property, pursuant to § 724(a), and
19  preserve the value of the avoided federal tax lien for the benefit of the bankruptcy
    estate, pursuant to § 551. Unlike California law, Arizona's homestead exemption
20  "does *not* provide for any reduction in the exemption amount for tax liens." *Tillman*,
    53 F.4th at 1163 (emphasis in original). Nevertheless, the bankruptcy court held that
21  the debtor was entitled to exempt only equity beyond the mortgage and tax lien
22  because Arizona's exemption laws were "ineffective" against the federal tax lien, and
    granted summary judgment in the trustee's favor. *Id.* at 1165. After examining the
23  statutory text of § 724(a) in context with other provisions of the Bankruptcy Code, the
24  Ninth Circuit held that "§ 724(a) concerns the trustee's avoidance of qualifying liens
    attached to the *property of the estate* at the time of *distribution*." *Id.* at 1169
25  (emphasis in original). The Ninth Circuit "conclude[d] that § 724(a) does not permit a
26  trustee to avoid a tax lien secured by exempt property because such securing property
    is not property of the estate," and reversed the bankruptcy court's ruling. *Id.* at 1171.
27
28  *Tillman* is inapposite to the appeal at hand.

Fourth, Debtors argue the court may use similar reasoning as stated in *In re Christensen*, 561 B.R. 195 (Bankr. D. Utah 2016), *aff'd In re Bird*, 577 B.R. 365 (B.A.P. 10th Cir. 2017), "to deny the Compromise and the distribution scheme it contemplates from a proposed sale which ignores the homestead exemption on property withdrawn from the estate." Dkt. 8 at 23. *Christensen* is a non-binding bankruptcy court opinion from outside this Circuit, which involves Utah state law, and which is distinguishable from the facts at hand.

In *Christensen*, 561 B.R. 197–98, the trustee and the IRS entered into an agreement whereby "the trustee agreed to market and sell the debtors' homes despite the fact that they were over-encumbered" and "the IRS agreed to subordinate its lien insofar as necessary to provide $10,000 to each estate, while the trustee and his counsel would use 11 U.S.C. § 724(b) to have their fees and costs paid in full from the sale proceeds prior to the IRS." *Christensen*, 561 B.R. 197–98. The bankruptcy court denied the trustee's application for compensation and reimbursement of expenses, finding the trustee's services were neither necessary to the administration of the case nor likely to benefit the estate. *Id.* at 217–18. In particular, the bankruptcy court noted that it was problematic for the trustee to negotiate a sale that would benefit the secured creditor and trustee primarily, while prejudicing junior lien holders and the debtor. *Id.* at 210–17; *see also id.* at 211 ("Some courts have held that a secured creditor and the trustee may agree that the trustee may receive a 'tip' or 'incentive bonus' for doing a secured creditor's dirty work. The Court finds these cases unpersuasive. … A debtor is not permitted to negotiate a short sale with a secured creditor and retain proceeds when the property is subject to a junior lien, and neither is the trustee. Even if the 'tip' or 'incentive bonus' results from the trustee's exercise of his authority as trustee, it is unavoidably proceeds of property of the estate.").

Unlike in *Christensen*, 561 B.R. at 212, the compromise here does not inure primarily to FCS and the Trustee's benefit, with "[a]ny benefit to unsecured creditors [being] purely incidental." FCS did not agree to subordinate a portion of its secured

15

1   lien—it agreed to assign a portion of its recovery from its secured claim to the

2   bankruptcy estate while subordinating its unsecured claims to ensure that other

3   unsecured creditors received the transferred funds. EOR 00090. The Trustee, in turn,

4   agreed to "ensure that a minimum of 50% of the net proceeds received by the

5   bankruptcy estate from the sale [would] be paid to non-administrative unsecured

6   creditors." *Id.*

7      In the underlying proceedings, the Trustee argued that this agreement would

8   provide a meaningful benefit to the unsecured creditors and satisfied the requirements

9   of *KVN*. *E.g.*, EOR 00510–11, 578–80. Debtors did not dispute the value of the

10  distribution and argued only that the carve out would not benefit the estate because

11  Debtors were entitled to the funds because of their homestead exemption. *E.g.*, EOR

12  00568. At the hearings on the Compromise Motion, the Bankruptcy Court found the

13  Trustee "clearly satisfied" the *KVN* factors, noting the compromise provided "a

14  spectacularly good result for creditors" and "frankly, a better result for creditors than

15  is achieved in most Chapter 7 bankruptcy cases." EOR 00594, 617–18. *Christensen*

16  is distinguishable, and the court will not grant the appeal on this basis.

17     Finally, Debtors contend "Bankruptcy Code section 105, longstanding

18  policies[,] and equity weigh against a trustee selling fully encumbered property and

19  evicting debtors." Dkt. 8 at 37 (cleaned up). According to Debtors, the court should

20  exercise its powers under §§ 105(a) or 522 "to deny the Trustee's 'Compromise' and

21  abolish the order of distribution orchestrated by the Trustee and FCS … because this

22  outcome is an abomination, to be struck down, not admired." Dkt. 8 at 37.[7] The court

23  _____

24  [7] Debtors state they "were aware when they filed their chapter 7 petition that their
    home was underwater when the tax liens were taken into account" and were advised

25  "they could expect to discharge their dischargeable debts and receive a fresh start

26  from the bankruptcy, which would then allow them to address the secured debts while
    maintaining their residence." Dkt. 8 at 37. The Trustee states, and Debtors do not

27  dispute, that Debtors have not made mortgage payments since the Petition Date and

28

1  disagrees for the reasons stated, and declines to reverse the Bankruptcy Court's

2  rulings on this basis.[8]

3      In sum, the court finds the Bankruptcy Court did not abuse its discretion in

4  sustaining in part the Trustee's Objection to Exemption, and DENIES the appeal on

5  this Issue.

6      **D.    The Abandonment Motion**

7      "On request of a party in interest and after notice and a hearing, the court may

8  order the trustee to abandon any property of the estate that is burdensome to the estate

9  or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b).

10 "[T]he principle of abandonment was developed to protect the bankruptcy estate from

11 the various costs and burdens of having to administer property which could not

12 conceivably benefit unsecured creditors of the estate." *KVN*, 514 B.R. at 6 (cleaned

13 up). "[A]n order compelling abandonment is the exception, not the rule.

14 Abandonment should only be compelled in order to help the creditors by assuring

15 some benefit in the administration of each asset. Absent an attempt by the trustee to

16 churn property worthless to the estate just to increase fees, abandonment should rarely

17 be ordered." *In re Vu*, 245 B.R. 644, 457 (B.A.P. 9th Cir. 2000) (cleaned up). A

18 party seeking abandonment of estate property bears the burden of showing by a

19 preponderance of the evidence that the property is burdensome or of inconsequential

20 _____

21 are in default under their consensual mortgages. Dkt. 27 at 37. Debtors chose
   voluntarily to file a petition for chapter 7 bankruptcy and render the Residence an
22 asset of the bankruptcy estate, subject to the provisions of the Bankruptcy Code.
   Their expectation that the Residence would be abandoned and disappointment with
23 the Bankruptcy Court's rulings, while understandable, do not establish a legally
24 protectable interest.

25 [8] The Trustee cites *Law v. Siegel*, 571 U.S. 415, 421 (2014), to argue § 105(a) cannot
26 be used to contravene specific statutory provisions of the Bankruptcy Code. Dkt. 9 at
   40. As the court finds reversal is not warranted here, the court declines to consider
27 whether a court could exercise its powers under § 105(a) to reverse a bankruptcy
28 court's approval of a carve-out under different circumstances.

value and benefit to the estate. *See id.* at 650.

Debtors contend the Bankruptcy Court erred in denying the Abandonment Motion because the Residence was over-encumbered and of inconsequential value and benefit to the estate due to Debtors' homestead exemption. Dkt. 8 at 11–12, 28. The Trustee responds the Bankruptcy Court did not abuse its discretion in denying the Abandonment Motion because the Residence has substantial value and benefit for the estate, which is expected to receive $100,000 from the carve-out, with at least 50% of the net proceeds to be paid to non-administrative unsecured creditors. Dkt. 9 at 41.

For the reasons stated, the Bankruptcy Court did not abuse its discretion in finding that the compromise was of substantial benefit to the estate and denying the Abandonment Motion. The appeal is DENIED on this Issue.

**IV.    Conclusion Regarding May 2, 2023 Order**

In sum, the court AFFIRMS the Bankruptcy Court's rulings and the May 2, 2023 Order in its entirety.

<u>**SEPTEMBER 8, 2023 ORDER**</u>

Debtors' appeal of the September 8, 2023 Order centers on the following Issue: Whether the Trustee can sell the Residence and pay general unsecured creditors and administrative expenses from the proceeds of the sale, pursuant to the stipulation approved by the Bankruptcy Court, before Debtors are paid their homestead exemption. *See* Dkt. 26 at 11; Dkt. 27 at 2. As Debtors repeat many of the arguments they raised in connection with their appeal of the May 2, 2023 Order (*see* Dkt. 26 at 11–24, 28–31), the court will address only the new arguments raised in connection with this appeal.

First, Debtors contend the Trustee makes the same argument in his Sale Motion as was raised in *in re Traverse*, 753 F.3d 19 (1st Cir. 2014). Dkt. 26 at 25. While Debtors admit *Traverse* involved "a slightly different scenario," they argue the First Circuit's reasoning precludes the Trustee from being able to sell the Residence here. *Id.* at 25–28. *Traverse* is a non-binding decision from outside this Circuit that is

distinguishable from the facts here.

In *Traverse*, 753 F.3d at 23, the trustee sought to avoid and preserve an unrecorded mortgage and to sell the debtor's residence as property of the bankruptcy estate. The First Circuit held that the trustee could not sell the residence because "the preservation of a lien entitles a bankruptcy estate to the full value of the preserved lien--no more and no less." *Id.* at 31. As the First Circuit explained:

> Where this lien is an undefaulted mortgage on otherwise exempted property, the trustee may for the benefit of the estate enjoy the liquid market value of that mortgage, claim the first proceeds from a voluntary sale, or wait to exercise the rights of a mortgagee in the event of a default. But the trustee may not repurpose the mortgage to transform otherwise exempted assets, to which neither the estate nor the original mortgagee boasted any ownership rights, into the property of the bankruptcy estate.

*Id.*

*Traverse* does not establish that a trustee cannot sell real property that a debtor has made property of the estate through a chapter 7 petition, as occurred here. Furthermore, the Trustee contends, and Debtors do not dispute, that Debtors have not made payments on the deeds of trust since the Petition Date and are in default under their consensual mortgages. Dkt. 27 at 37. Unlike in *Traverse*, FCS and the trustee have an ownership interest that entitles the Trustee to sell the Residence. *Traverse* is inapposite, and Debtors' argument fails.

Second, Debtors argue that even if FCS' compromise with the Trustee constituted a valid settlement, it did not grant the Trustee the power to sell the Residence without paying Debtors their homestead exemption because "nothing here allows the Trustee to jump from receiving an assignment of a deed of trust and do anything else other than exercise the same rights FCS had under its deed of trust, which here, is to foreclose." Dkt. 26 at 24. According to Debtors, "[b]ecause the Trustee, here, did not 'recover' property pursuant to section 510(c)(2), which is the only bridge that gets the Trustee from receiving an 'assignment' or 'carveout' from a

1  secured lender, and then to authority to 1) sell the property; and 2) not pay the

2  Debtors' homestead exemption, which is section 522(g)." *Id.* (errors in original).

3      Debtors' argument is again largely incomprehensible.[9]  For one, it is unclear

4  why Debtors are challenging the Trustee's authority to sell the Residence under

5  § 522(g), given: (1) the Trustee brought the Sale Motion pursuant to § 105(a),

6  § 363(b), (f), and (m), and Federal Rule of Bankruptcy Procedure 6004(a)—not

7  § 522(g) (EOR 00640); and (2) the Bankruptcy Court did not identify § 522(g) as a

8  basis for its ruling (*see* EOR 000780–81, 798–807), or discuss that statute other than

9  to explain why "[t]he 522(g) issue isn't relevant here" (EOR 00597).

10      Debtors do not explain clearly why the Trustee would need to "recover"

11 property under § 510(c)(2) to have the authority to sell the Residence or why the

12 transfer of funds pursuant to the carve-out agreement does not qualify as a recovery

13 even if the court were to assume *arguendo* that § 510(c)(2) applies.[10]  In contrast, the

14 Trustee argues he is authorized to sell the Residence because he satisfied the standards

15 for a sale under § 363(b).  Dkt. 27 at 19–25.

16      The Bankruptcy Court found the Trustee satisfied the business judgment

17 standard for selling the Property under § 363.  EOR 00798–804.  Debtors do not

18

19 _____

20 [9] Debtors raised the same argument in their reply in support of their appeal of the May
   2, 2023 Order.  Dkt. 11 at 6–11.  The argument was no clearer there.

21 [10] Debtors contend *KVN* is distinguishable because that decision "relied on section

22 522(g) to proceed with a sale that subordinated the debtors' homestead exemption."
   Dkt. 26 at 24.  According to Debtors, "[b]ecause [the] trustee in *KVN* … recovered

23 property in litigation, and obtained a subordination from the lender under section §

24 510(c)(2), [the trustee] proceeded under 522(g) to sell and not pay the debtors'
   homestead exemption on the subordinated portion of the lender's claim in the hands of

25 the [t]rustee."  *Id.*  *KVN* did not rely on §§ 510(c)(2) or 522 for any portion of its

26 reasoning, and cited § 522 only to distinguish a case in which the trustee sought to
   disallow an exemption under § 522(c)(1).  *KVN*, 514 B.R. at 9.  Debtors do not cite

27 any legal authority in support of their arguments, and it is unclear why they believe

28 *KVN* "relied on section 522(g)."  Debtors' argument, thus, fails.

present any argument regarding the relevant factors and argue only that the Trustee cannot sell the Residence because exempt property is withdrawn from the estate under *Tillman*. Dkt. 26 at 28. This argument fails for the reasons stated.

In sum, Debtors fail to demonstrate the Trustee lacked the authority to sell the Residence or that there is any other valid basis to prevent the sale. The court, therefore, AFFIRMS the Bankruptcy Court's rulings and the September 8, 2023 Order in its entirety.

## **CONCLUSION**

For the aforementioned reasons, the court AFFIRMS the Bankruptcy Court's May 2 and September 8, 2023 Orders and DISMISSES the subject appeals.

IT IS SO ORDERED.

Dated: March 27, 2025

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge